# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA NORTHERN DIVISION

| | | |
|---|---|---|
| **OWEN J. ROGAL, D.D.S., P.C.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **3:06-cv-00711-MHT** |
| **SKILSTAF, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Charles A. Stewart III
Bradley Arant Rose & White LLP
The Alabama Center for Commerce
401 Adams Avenue, Suite 780
Montgomery, AL 36104
Telephone: (334) 956-7700
Facsimile: (334) 956-7701

Amelia T. Driscoll
Bradley Arant Rose & White LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2104
Telephone: (205) 521-8000
Facsimile: (205) 521-8800

Attorneys for Defendant
Skilstaf, Inc.

# TABLE OF CONTENTS

I.    STATEMENT OF UNDISPUTED FACTS ........................................ 2

    A.    Introduction and Plan Provisions ............................................. 2

    B.    Plaintiff's Claim for Coverage ................................................. 5

II.   THE JUDICIAL STANDARD OF REVIEW ..................................... 8

III.  RRI CORRECTLY DENIED PLAINTIFF'S CLAIM. ..................... 10

IV.   PLAINTIFF DID NOT EXHAUST THE PLAN'S ADMINISTRATIVE REMEDIES. .................................................... 12

V.    CONCLUSION ................................................................................ 144

CERTIFICATE OF SERVICE ................................................................. 166

**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **OWEN J. ROGAL, D.D.S., P.C.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **3:06-cv-00711-MHT** |
| **SKILSTAF, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S BRIEF IN SUPPORT OF
<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

Defendant Skilstaf, Inc. ("Skilstaf" or "Defendant") hereby submits this brief in support of its Motion for Summary Judgment. Defendant's Motion for Summary Judgment should be granted and Plaintiff's claims dismissed because: (1) Defendant correctly determined that the claims Plaintiff submitted in connection with its treatment of Dennis Berry's work-related injury were not covered under the terms of the Skilstaf Group Health Plan (the "Plan"); and (2) Plaintiff has failed to exhaust the Plan's administrative remedies.

1

## I.   STATEMENT OF UNDISPUTED FACTS
### A.   <u>Introduction and Plan Provisions</u>

1.    Skilstaf is an employee leasing company that provides its clients with employee benefits and human resources services including, but not limited to, health care benefits.  <u>See</u> Aff. of Kim Liner at ¶ 3, attached hereto as Exhibit 1 ("Liner's Affidavit").[1]

2.    As an employee leasing company, Skilstaf enters into co-employment agreements with its clients under which the client leases its employees to Skilstaf and Skilstaf simultaneously assigns the employees back to the client.  <u>See</u> <u>id.</u>

3.    Although Skilstaf's clients retain direct control and supervision of their employees, Skilstaf becomes the co-employer of its clients' employees for specified purposes such as payroll, benefits, and workers' compensation.  <u>See</u> <u>id.</u> at ¶ 4.

4.    Because Newspaper Processing, Inc. is one of Skilstaf's clients, Skilstaf provides group health coverage under the Plan to Newspaper Processing, Inc. employees.  <u>See</u> <u>id.</u> at ¶ 5.

---

[1] The following documents are attached to the Affidavit of Robert Johnson ("Johnson's Affidavit") and are being filed under seal pursuant to the Court's January 11, 2007, order: (1) Exhibit A – the Plan's Summary Plan Description ("SPD"), which describes the health benefits available under the Plan to eligible employees, Skilstaf-00001 through Skilstaf-00085; and (2) Exhibit B – excerpts from the Administrative Record.  For ease of reference, pages within each respective exhibit will be referred to in this brief by their bates-labeled page numbers only, such as "Skilstaf-00125."

5.    Dennis Berry ("Mr. Berry") is an employee of Newspaper Processing, Inc., and, during the time relevant to the Complaint, was a participant in the Plan.  See id. at ¶ 6.

6.    Accordingly, during the time relevant to the Complaint, Skilstaf provided group health coverage under the Plan to Mr. Berry.  See id.

7.    The Plan, which is an employee welfare benefits plan, is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C § 1001 et seq. ("ERISA").  See Skilstaf-00003.

8.    Skilstaf is the sponsor of the Plan.  Skilstaf-00060

9.    Risk Reduction, Inc. ("RRI") is the Plan Administrator. Skilstaf-00060.

10.    The Plan vests full discretionary authority in RRI to interpret the Plan's terms and provisions.  Skilstaf-00058 (making clear that the "Plan Administrator has full discretion to interpret the Plan and to apply [the Plan's] claim review procedures"), Skilstaf-00060 (defining RRI as the Plan Administrator).

11.    To claim policy benefits under the Plan, a claimant must submit a claim to RRI within 180 days of the date the service was provided. Skilstaf-00058.

3

12. To the extent RRI needs more information to process a claimant's claim, the claimant must provide such information within 45 days of RRI's request. Skilstaf-00058.

13. A claimant's "[f]ailure to respond and provide the information [requested by RRI] may result in denial of the claim." Skilstaf-00058.

14. In the event RRI denies a claim, the claimant may make a written request for a review of RRI's denial decision. Skilstaf-00058.

15. When reviewing its initial denial decision, RRI may request a claimant "to furnish, in connection with the review of the [initial] denial, information that [RRI] reasonably believes is important to the review." Skilstaf-00058.

16. Several types of medical benefits are not covered under the Plan. See Skilstaf-00039-Skilstaf-00042.

17. As specifically relevant to the instant dispute, the Plan's SPD makes clear that "[c]harges for injury or sickness occurring during or arising from [a claimant's] performance of service in a covered business or industry under worker's compensation or an occupational disease act or law" are not payable under the Plan. Skilstaf-00040.

### B.    <u>Plaintiff's Claim for Coverage</u>

18.    Mr. Berry was injured in a work-related accident on or about September 26, 2003. Skilstaf-00206 (noting that Mr. Berry suffered a "Back/Lower/Lumbar" injury on September 26, 2003, while lifting a conveyor at work).

19.    Beginning on or about August 6, 2004, Plaintiff began treating Mr. Berry's work-related injury via radio frequency therapy.[2] <u>See, e.g.</u>, Skilstaf-00211, Skilstaf-00352, Skilstaf-00369, Skilstaf-00386 (attaching representative examples of the operative reports that Plaintiff's employees drafted in connection with their repeated treatments of Mr. Berry wherein Plaintiff's employees made clear that their treatment of Dennis was in connection with an injury he sustained in "a work related accident on 9-26-2003"); <u>see also</u> Ex. 3 at ¶ 5, attached hereto (verifying that Plaintiff's treatment of Mr. Berry began on or about August 6, 2004).

20.    In connection with its alleged treatment of Mr. Berry, Plaintiff ultimately submitted medical bills to Defendant totaling $369,390.00. <u>See</u> Ex. 3 at ¶ 6.

---

[2] According to one website, Plaintiff is in the business of treating its patients' chronic pain through a non-invasive radio frequency procedure whereby Plaintiff's employees place pinpointed heat directly into their patients' injured muscles. <u>See</u> Ex. 2, attached hereto.

21. On April 19, 2005, RRI notified Plaintiff's counsel that the claims Plaintiff had submitted in connection with its treatment of Mr. Berry were not covered under the terms of the Plan because "the bills in question [were] the result of an alleged work-related injury or [were] otherwise subject to workers' compensation law." Skilstaf-00101.

22. At that time, RRI also requested that Plaintiff's counsel submit any information in its possession that conflicted with RRI's understanding "that the bills in question [were] the result of an alleged work-related injury. . . ." Skilstaf-00101.

23. Despite RRI's request for information, Plaintiff never submitted any documentation that conflicted with RRI's understanding "that the bills in question [were] the result of an alleged work-related injury . . . ." See Johnson's Affidavit at ¶ 7.

24. To the contrary, Plaintiff's counsel submitted documentation on May 20, 2005, which confirmed RRI's understanding that Plaintiff's claim was a workers' compensation claim. See Skilstaf-00196 (admitting that Plaintiff had already attempted, unsuccessfully, to get coverage for "payment of Mr. Berry's medical bills relative to The Pain Center" from a workers' compensation carrier); Skilstaf-00197 – Skilstaf-00203 (attaching

documents representative of the denial of Plaintiff's claim by a workers' compensation carrier).

25.    On June 10, 2005, RRI notified Plaintiff's counsel that RRI's:

> [R]eview of this matter, including the material you provided [with your May 20, 2005, correspondence], indicates that the claim is a workers' compensation claim.  In fact, the Pain Center apparently understood from the beginning that its treatment of Mr. Berry was for a workers' compensation injury.  As such, it was incumbent upon the Pain Center, as with any provider in that situation, to ensure that its treatment was authorized by the workers' compensation carrier.  I understand from your correspondence that the workers' compensation claims administrator has initially denied the relevant claims.  However, it does not appear that Mr. Berry or your client has exhausted the administrative or appeals process in that regard.  Since workers' compensation claims are excluded from coverage under the Skilstaf Health Plan, as we previously informed you, the Pain Center might opt to continue pursuing whatever appropriate coverage might be available from the workers' compensation carrier.

Skilstaf-000204.

26.    In its June 10, 2005, correspondence, RRI also notified Plaintiff's counsel that, to the extent he disagreed with RRI's denial decision, the Plan "ha[d] its own appeals process, which [was] explained in Section 14 of the plan document already provided to you."  Skilstaf-00204.

27.    Despite the fact that RRI expressly notified Plaintiff's counsel that the Plan had its own appeals process, Plaintiff never appealed RRI's

initial decision to deny payment of Plaintiff's claims.  <u>See</u> Johnson's Affidavit at ¶ 8.

28.    Instead, Plaintiff filed the instant lawsuit on or about October 6, 2005, seeking coverage under the Plan for the costs it had incurred in treating Mr. Berry.  <u>See</u> Ex. 3.

## II.    THE JUDICIAL STANDARD OF REVIEW

Under ERISA, "a deferential standard of review [is] appropriate when a [decision maker] exercises discretionary powers."  <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 111 (1989).  If a plan's terms vest discretion in a decision maker to interpret that plan, then a court will uphold the decision maker's judgment unless the decision maker has abused its discretion.  <u>Id.</u>

The Plan vests full discretionary power in RRI to interpret the Plan, to determine all inquiries arising in the Plan's administration, application, and interpretation, and to apply the Plan's claim review procedures.  Skilstaf-00058, Skilstaf-00060 (defining RRI as the Plan Administrator and outlining the Plan Administrator's discretionary authority).  Therefore, RRI's decision to deny Plaintiff's claim is to be reviewed by the Court under the arbitrary and capricious standard of review.

Under the arbitrary and capricious standard of review, the Court is to first conduct a de novo review to determine whether the decision maker's interpretation is "wrong" and the claimant's rival interpretation reasonable. See Williams v. BellSouth Telecomms., Inc., 373 F.3d 1132, 1137-38 (11th Cir. 2004) ("recapitulat[ing]" the Eleventh Circuit's multi-step approach for reviewing a benefit denial). In the Eleventh Circuit, a court "conducting a de novo review . . . is bound by the provisions of the documents establishing an employee benefit plan without deferring to either party's interpretation." Moon v. Am. Home Assurance Co., 888 F.2d 86, 89 (11th Cir. 1989) (internal quotation marks and citations omitted). If a de novo review reveals the decision maker's interpretation to be "correct," the inquiry ends and a court must uphold the decision maker's determination. Adams v. Thiokol Corp., 231 F.3d 837, 843 (11th Cir. 2000).

If, however, the court finds that the decision maker's interpretation was "wrong," it must then consider whether the interpretation was arbitrary and capricious. A reasonable decision must be upheld "even if there is evidence that would support a contrary decision." Jett v. Blue Cross & Blue Shield of Ala., 890 F.2d 1137, 1140 (11th Cir. 1989). Therefore, any "wrong but reasonable interpretation is entitled to deference even though the claimant's interpretation is also reasonable," HCA Health Services of

Georgia, Inc. v. Employers Health Insurance Co., 240 F.3d 982, 994 (11th Cir. 2001), and even though evidence "would support a contrary decision[,]" Jett, 890 F.2d at 1140.

When applying the arbitrary and capricious standard, "[t]he function of the court is to determine whether there was a reasonable basis for the decision, based upon the facts as known to the [decision maker] at the time the decision was made." Id. at 1139. Further, when applying the arbitrary and capricious standard, a court is to limit its scope of review to the administrative record that was before the decision maker at the time the decision maker denied or terminated the claimant's benefits. Paramore v. Delta Airlines, Inc., 129 F.3d 1446, 1451 (11th Cir. 1997). Therefore, to determine the propriety of RRI's decision to deny Plaintiff's claim, this Court's scope of review is limited to the information that was available to RRI when it made its decision.

## III.    RRI CORRECTLY DENIED PLAINTIFF'S CLAIM.

In this action, Plaintiff seeks to recover the costs it incurred in treating Mr. Berry's work-related injury – costs which Skilstaf properly refused to cover. Plaintiff's ERISA § 502(a) claim is "to recover benefits due to [it] under the terms of [Mr. Berry's] plan . . . ." 29 U.S.C. § 1132(a)(1)(B); see Alday v. Container Corp., 906 F.2d 660, 665 (11th Cir. 1990) ("[A]ny

[participant's] right to . . . benefits at a particular cost can only be found if it is established by contract under the terms of the ERISA-governed benefit plan document."). Because RRI correctly determined that Skilstaf need not cover the costs that Plaintiff incurred when treating Mr. Berry's work-related injury, Defendant's Motion should be granted and Plaintiff's claims dismissed.

The Plan's SPD makes clear that Skilstaf need not pay "[c]harges for injury . . . occurring during or arising from [a claimant's] performance of service in a covered business or industry under worker's compensation or an occupational disease act or law . . . ." Skilstaf-00040. It is undisputed that Plaintiff treated Mr. Berry for an injury he sustained in a work-related accident. See, e.g., Skilstaf-00211 (making clear, in each operative report that it submitted in connection with its treatment of Mr. Berry, that Plaintiff treated Mr. Berry for an injury he sustained in "a work related accident on 9-26-2003"); Johnson's Affidavit at ¶ 7 (confirming that Plaintiff never submitted any documentation that contradicted RRI's understanding that Plaintiff treated Mr. Berry for a work-related injury).

Under the SPD's express terms, Skilstaf was not required to cover charges for any injury that Mr. Berry sustained in any work-related accident. Skilstaf-00040. Because it is undisputed that Plaintiff treated Mr. Berry for

11

an injury he sustained in a work-related accident, RRI correctly determined that Skilstaf need not cover the charges Plaintiff submitted in connection with its treatment of Mr. Berry.  Accordingly, Skilstaf's Motion should be granted and Plaintiff's claims dismissed.

## IV.    PLAINTIFF   DID   NOT   EXHAUST   THE   PLAN'S ADMINISTRATIVE REMEDIES.

"The law is clear in this circuit that plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court." Counts v. Am. Gen. Life and Accident Ins. Co., 111 F.3d 105, 107 (11th Cir. 1997); see also Harrison v. United Mine Workers of Am. 1974 Benefit Plan & Trust, 941 F.2d 1190, 1193 (11th Cir. 1991); accord Merritt v. Confederation Life Ins. Co., 881 F.2d 1034, 1035 (11th Cir. 1989); Mason v. Cont'l Group, Inc., 763 F.2d 1219, 1227 (11th Cir. 1985).  It is undisputed that Plaintiff has never requested a review of RRI's initial claim denial, which is the available administrative remedy under the Plan.  See Johnson's Affidavit at ¶ 8.  Accordingly, the claims Plaintiff has asserted in this federal court action should be dismissed.

The Plan's SPD makes clear that, whenever RRI denies a claim for coverage under the Plan, a claimant may appeal RRI's initial denial decision. See Skilstaf-00058.  On April 19, 2005, RRI notified Plaintiff's counsel that

the claims it had submitted in connection with its treatment of Mr. Berry were not covered under the terms of the Plan because "the bills in question [were] the result of an alleged work-related injury or [were] otherwise subject to workers' compensation law."  See Skilstaf-00101; see also Skilstaf-00204.  In addition to providing Plaintiff's counsel with a copy of the SPD, which clearly explained the Plan's administrative remedies, RRI also expressly notified Plaintiff's counsel that the Plan had "its own appeals process, which [was] explained in Section 14 of the plan document already provided to you."  Skilstaf-00204.  Despite this express notification to Plaintiff's counsel, Plaintiff never appealed RRI's initial decision to deny payment with respect to the claims Plaintiff had submitted in connection with its treatment of Mr. Berry.  See Johnson's Affidavit at ¶ 8.  Instead, Plaintiff prematurely filed the instant lawsuit.

Courts in this Circuit have made clear that a plaintiff's lawsuit should be dismissed if the plaintiff has untimely attempted to exhaust a plan's administrative remedies.  In Stephenson v. Provident Life & Accident Insurance Company, for example, the insurer-defendant terminated the plaintiff's disability benefits and told her that she had sixty days to appeal the insurer's denial decision.  1 F. Supp. 2d 1326, 1331-32 (M.D. Ala. 1998).  Despite this notification, the plaintiff in Stephenson did not respond

"until approximately four and one-half months after" she received the insurer's notice – or about two and one-half months too late.  See id. at 1332.  Undoubtedly recognizing that a dismissal based on this two and one-half months delay in requesting a review would result in a dismissal with prejudice of the plaintiff's claims, the United States District Court for the Middle District of Alabama nonetheless granted summary judgment in the insurer's favor based on the plaintiff's failure to submit a timely request for review of the decision to discontinue disability benefits.  See id.  In the instant dispute, Plaintiff has never requested any review of RRI's decision to deny payment of the claims that Plaintiff submitted in connection with its treatment of Mr. Berry.  Accordingly, Plaintiff's claims in this lawsuit should be dismissed with prejudice.  See id.

## V.    CONCLUSION

For the reasons detailed above, Skilstaf is entitled to summary judgment in its favor and Plaintiff's claims should be dismissed with prejudice.

Respectfully Submitted,

s/Charles A. Stewart III
_____
Charles A. Stewart III (STE067)
Bradley Arant Rose & White LLP
The Alabama Center for Commerce
401 Adams Avenue, Suite 780
Montgomery, AL 36104
Telephone: (334) 956-7700
Facsimile: (334) 956-7701
cstewart@bradleyarant.com

s/Amelia T. Driscoll
_____
Amelia T. Driscoll (DRI016)
Bradley Arant Rose & White LLP
1819 Fifth Avenue North
Birmingham, AL 35203-2104
Telephone: (205) 521-8000
Facsimile: (205) 521-8800
adriscoll@bradleyarant.com

Attorneys for Defendant
Skilstaf, Inc.

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 9th, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Robert E. Cole
437 Chestnut Street, Suite 218
Philadelphia, PA  19109

Beth A. Friel
Jeanne L. Bakker
Mongtomery, McCracken, Walker & Rhoads
123 South Broad Street
Philadelphia, PA  19109

and I hereby certify that I have mailed by U. S. Postal Service the document to the following non-CM/ECF participants:  None.

/s/ Amelia T. Driscoll

# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

OWEN J. ROGAL, D.D.S., P.C.,   )
   )
     Plaintiff,   )
   )
v.   )   **CIVIL ACTION NO.**
   )   **3:06-cv-00711-MHT**
SKILSTAF, INC.,   )
   )
     Defendant.   )
   )

## <u>AFFIDAVIT OF KIM LINER</u>

STATE OF ALABAMA   )
   :
TALLAPOOSA COUNTY   )

Personally appeared before me, a Notary Public in and for said County and State, Kim Liner, who being known to me, and first duly sworn, deposes and says:

1.   My name is Kim Liner. I am over the age of 21 and I am competent to make this affidavit. I have personal knowledge of the statements made herein unless otherwise noted, all of which are correct and true.

2.   I am the Payroll Manager at Skilstaf Inc. ("Skilstaf").

3.    Skilstaf is an employee leasing company that provides its clients with employee benefits and human resources services including, but not limited to, health care benefits.  As an employee leasing company, Skilstaf enters into co-employment agreements with its clients, under which the client leases its employees to Skilstaf and Skilstaf simultaneously assigns the employees back to the client.

4.    Although Skilstaf's clients retain direct control and supervision of their employees, Skilstaf becomes the co-employer of its clients' employees for specified purposes such as payroll, benefits, and workers' compensation.

5.    Newspaper Processing, Inc. is one of Skilstaf's clients; accordingly, Skilstaf provides group health coverage under the Skilstaf Group Health Plan (the "Plan") to Newspaper Processing, Inc. employees.

6.    Dennis Berry ("Mr. Berry") is an employee of Newspaper Processing, Inc., and, during the time relevant to the Complaint, was a participant in the Plan.  Accordingly, during the time relevant to the Complaint, Skilstaf provided group health coverage under the Plan to Mr. Berry.

I have read the foregoing Affidavit, ¶¶ 1-6, and I swear and affirm that it is true and correct to the best of my knowledge and belief.

_Kim Liner_
Kim Liner

Sworn to and subscribed before me
on this the 4th day of April, 2007.

_Janice Denney_
NOTARY PUBLIC

MY COMMISSION EXPIRES 12-8-09

3

# EXHIBIT 2



## Non invasive radio frequency technique can be used to permanently eliminate chronic pain

12 Jun 2004    | Click to Print |

Breakthrough Treatment Using Pinpointed Heat Can Help Millions Who Suffer From Pain.

According to a national survey from Partners against Pain at least one member of Americas 44 million households (43%) suffers from chronic pain due to a specific illness or medical condition. In the past, most people suffering from pain have treated the symptoms with prescription or over-the-counter medication.

However, 66% of those surveyed said that their OTC medication is not completely effective and 52% said that their prescription medication is not completely effective.

Treating pain with medication can often result in addiction and other side effects and it is not a permanent solution to ending pain. Other medical solutions include surgery, however when performed, many patients and their doctors find that the pain frequently returns and that it has not helped alleviate their suffering.

Many patients suffering from chronic pain have been told that their pain is coming from a disc herniation or nerve injury. Dr. Owen Rogal, Director of The Pain Center in Philadelphia, PA, has recently developed a new breakthrough treatment in pain management called RFS.

Instead of treating the nerves for pain, which will not produce permanent results, RFS targets the muscles where the actual pain stems from. The treatment is a non-invasive radio frequency procedure using pinpointed heat placed in injured muscles. The heat allows the muscles to heal thereby producing permanent pain relief. The Radio Frequency procedure, RFS, is a four-step system:

-- Pain is identified with finger pressure to test for sensitive muscles.

-- A small amount of anesthetic is placed the injured muscle.

-- Pain relief confirms the muscle is the source of the pain.

-- A special needle tip that is attached to the RFS machine is inserted into the confirmed pain area. The muscle tissue surrounding the needle tip is then heated. The heat allows the muscle to heal and stops the pain permanently.

The RFS system is generally performed over a 5-week period. Patients are awake during the procedure, which usually takes about 20-30 minutes from start to finish. Other than the insertion of the anesthetic needle, there is no discomfort during the procedure.

Following the procedure, there is no down time and most patients will immediately return to work. Dr. Rogal and his staff at The Pain Center have used this procedure to treat a variety of pain-related problems including lower back, knees, neck, shoulder/arm, ankle/foot, hips, bursitis, arthritis, and migraine headaches.

The Pain Center doctor's have successfully performed The RFS procedure on more than 5,000 chronic pain sufferers that were originally diagnosed with disc herniation or nerve problems, thereby avoiding surgical procedures.

"Pain is a serious pubic health problem, which costs billions of dollars a year in health care and lost productivity. Many patients have been suffering from pain for years, trying a multitude of different methods of treatment with no permanent results. This new technology can now permanently end the suffering of millions," says Dr. Rogal.

The Pain Center accepts out of network insurance such as POS (point of service or PPO).

Deborah Straus
212.213.6444
KMR Communications, Inc.
114 East 32nd Street
Suite 1200
New York, NY 10016

Article URL: http://www.medicalnewstoday.com/medicalnews.php?newsid=9438

Save time! Get the latest medical news headlines for your specialist area, in a weekly newsletter e-mail. See http://www.medicalnewstoday.com/newsletters.php for details.

Send your press releases to pressrelease@medicalnewstoday.com

# EXHIBIT 3

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY, PA
CIVIL ACTION - LAW

ROBERT E. COLE
ROBERT E. COLE, P.C.
ATTORNEY I.D. NO. 73263
437 CHESTNUT STREET, SUITE 218
PHILADELPHIA, PA  19106
(215) 922-2050

Attorney For Plaintiff

---

OWEN J. ROGAL, D.D.S., P.C.          :
d/b/a THE PAIN CENTER
501-07 SOUTH 12TH STREET
PHILADELPHIA, PA  19147

        Plaintiff          :          TERM, 2005

        V.          :          NO.

SKILSTAF, INC.                       :
P.O. BOX 729
ALEXANDER CITY, AL  35011

        Defendant          :

---

## COMPLAINT
### 1-C (CONTRACT)

Plaintiff, by its undersigned attorney, hereby pleads the following Complaint:

1.    The plaintiff in this matter is Owen J. Rogal, D.D.S., P.C., d/b/a The Pain Center, a corporation with principal place of business being located at 501-07 South 12th Street, Philadelphia, PA  19147.

2.    Defendant Skilstaf, Inc. is an Alabama corporation and insurance provider/plan administrator with its headquarters and principal place of business located at P.O. Box 729, Alexander

City, AL 35011.

    3.   At all times material and relevant hereto, one (1)
Dennis Berry was enrolled in a group healthcare insurance plan
provided and/or administrated by Defendant Skilstaf, Inc..

    4.   In August 2004 and thereafter, the above insurance
policy was in full force and effect.

    5.   On or about August 6, 2004, Dennis Berry began
treatment with plaintiff for various ailments, including but not
limited to lower back, hip and leg pain. At all time relevant
hereto, the treatments rendered by plaintiff to Dennis Berry
Davis were reasonable and necessary, properly and medically
justified.

    6.   The total charges for the medical services provided to
Dennis Berry at plaintiff from August 6, 2004 through August 19,
2005 were $369,390.00. (See Exhibit "A", attached hereto and
made by reference a part hereof).

    7.   Said Dennis Berry may be obligated to receive and
undergo additional medical attention and care with plaintiff and
incur substantial expenses described in an effort to cure himself
of his said injuries and will or may be obligated to expend such
sums or incur such expenditures for an indefinite time in the
future.

8.    On or about August 6, 2004, one (1) Dennis Berry executed an Assignment of Rights to plaintiff.  (See Exhibit "B", attached hereto and made by reference a part hereof).

9.    Defendant unreasonably and unfairly withheld policy benefits, despite repeated additional demands by plaintiff for them to pay the aforementioned medical providers.

10.    The conduct of Defendant includes, but is not limited to, the following:

   (a)  Failing to give equal consideration to paying the claim as to not paying the claim;
   (b)  Failing to objectively and fairly evaluate plaintiff's claim;
   (c)  Asserting policy defenses without a reasonable basis in fact;
   (d)  Compelling plaintiff to institute the lawsuit to obtain policy benefits that should have paid promptly and without the necessity of litigation;
   (e)  Dilatory and abusive claims handling;
   (f)  Placing unduly restrictive and self-serving interpretations on the policies
   (g)  Acting unreasonably and unfairly in response to plaintiff's claim;
   (h)  Failing to promptly provide a reasonable factual explanation of the basis of denial of plaintiff's claim;
   (i)  Conducting an unfair and unreasonable investigation of Plaintiffs' claims; and
   (j)  Otherwise unreasonably and unfairly withholding policy benefits justly due and owing plaintiff.

11.    As an insurer, defendant owes fiduciary, contractual, and statutory duties toward plaintiff to investigate the claims in good faith and pay same promptly.

12.    Plaintiff, at all relevant times, fully complied with all of the terms of the policies and all conditions precedent

and subsequent to plaintiff's right to receive benefits under the policy.

13.    Nonetheless, defendant has refused, without legal justification or cause, and continue to refuse, to act in good faith and/or to pay plaintiff's medical bills incurred.

## COUNT I
## BREACH OF CONTRACT

14.    Plaintiff incorporates by reference paragraphs one (1) through thirteen (13) above as though fully set forth hereinafter at length.

15.    Plaintiff has satisfied all of its obligations under the above insurance policy, including, but not limited to, all conditions precedent and all conditions subsequent.

16.    By failing to make payments to plaintiff in the amounts owed, defendant breached its contractual obligations to plaintiff under the policy.

WHEREFORE, plaintiff demands judgment against defendant in the amount of $369,390.00 plus additional compensatory and/or consequential damages allowed by law, together with interest, court costs, and such other relief as this Honorable Court shall deem just and proper.

## COUNT II
## BAD FAITH

17.    Plaintiff incorporates by reference paragraphs one (1) through sixteen (16) as though fully set forth hereinafter at length.

18.    For the reason set forth above, including, but not limited to, failing to promptly offer indemnification to plaintiff; failing to objectively and fairly evaluate plaintiff's claims; asserting defenses without reasonable basis in fact; unnecessarily and unreasonably compelling litigation; conducting an unreasonable investigation of plaintiff's claims; and unreasonably withholding policy benefits, defendant has violated its policy's covenants of good faith and fair dealing and/or committed the tort of bad faith, including, but not limited to, violating 42 Pa. C.S.A. 3371, for which defendant is liable for interest on the prime rate of interest plus three percent, court costs, attorneys' fees, punitive damages, and such other compensatory and/or consequential damages allowed by law.

WHEREFORE, plaintiffs demand compensatory, consequential, and punitive damages from defendants, in an amount in excess of Fifty Thousand Dollars (50,000.00), plus interest, court costs, attorneys' fees, and such other relief as this Honorable Court shall deem just and proper.

## COUNT III
### DECEIT

19.     Plaintiff incorporates by reference paragraphs one (1) through eighteen (18) above as though fully set forth hereinafter at length.

20.     The conduct of defendant constitutes fraud, misrepresentation and deceit in that, <u>inter alia</u>, defendant knowingly, willingly, and/or recklessly refused and failed to comply with the terms and conditions of its policy, including, but not limited to, the policy's implied covenants of good faith and fair dealing; the statutes of the Commonwealth of Pennsylvania; and the regulations of the Insurance Department of Commonwealth of Pennsylvania; and otherwise violated their fiduciary, contractual, and statutory duties in dealing with plaintiff.

21.     Plaintiff justifiably relied upon the representations, which defendant made in its policy, in sales presentations' and/or brochures provided by the agents of defendant, and/or in public advertising, that all claims would be objectively evaluated and fairly and promptly paid, which representations were false when made and, therefore, the conduct of defendant constitute the common law tort of deceit for which plaintiff seek compensatory, consequential, and punitive damages.

WHEREFORE, plaintiff demands compensatory, consequential, and punitive damages from defendant jointly and severally in an amount in excess of Fifty Thousand Dollars ($50,000.00), plus interest, court costs, attorneys' fees, and such other relief as this Honorable Court shall deem just and proper.

10/6/05
Date

Robert E. Cole, Esquire
Attorney for Plaintiff
Atty. I.D. No. 73263
437 Chestnut Street, Suite 218
Philadelphia, PA  19106
(215) 922-2050

FROM :THE PAIN CENTER                FAX NO. :2159231012          Jul. 24 2005 10:21AM P2

08/24/05                          THE PAIN CENTER
10:30:33                        BILLINGS AND RECEIPTS                    Page 1
                                   Berry, Dennis

| DATE OF SERVICE | DEPT | AMOUNT BILLED | AMOUNT PAID | BALANCE |
|---|---|---|---|---|
| 08/06/2004 | IW | 550.00 | .00 | 550.00 |
| 08/06/2004 | ZW | 7318.00 | .00 | 7318.00 |
| 08/09/2004 | IW | 300.00 | .00 | 300.00 |
| 08/09/2004 | ZW | 7318.00 | .00 | 7318.00 |
| 08/10/2004 | IW | 900.00 | .00 | 900.00 |
| 08/10/2004 | ZW | 7318.00 | .00 | 7318.00 |
| 08/11/2004 | IW | 300.00 | .00 | 300.00 |
| 08/11/2004 | ZW | 7318.00 | .00 | 7318.00 |
| 08/16/2004 | IW | 300.00 | .00 | 300.00 |
| 08/16/2004 | ZW | 7318.00 | .00 | 7318.00 |
| 08/17/2004 | IW | 300.00 | .00 | 300.00 |
| 08/17/2004 | ZW | 7318.00 | .00 | 7318.00 |
| 08/18/2004 | IW | 300.00 | .00 | 300.00 |
| 08/18/2004 | ZW | 7318.00 | .00 | 7318.00 |
| 08/23/2004 | IW | 300.00 | .00 | 300.00 |
| 08/23/2004 | ZW | 7318.00 | .00 | 7318.00 |
| 08/24/2004 | IW | 600.00 | .00 | 600.00 |
| 08/24/2004 | ZW | 7318.00 | .00 | 7318.00 |
| 08/26/2004 | M | 80.00 | .00 | 80.00 |
| 08/27/2004 | M | 80.00 | .00 | 80.00 |
| 08/30/2004 | IW | 300.00 | .00 | 300.00 |
| 08/31/2004 | IW | 300.00 | .00 | 300.00 |
| 08/31/2004 | ZW | 3518.00 | .00 | 3518.00 |
| 09/01/2004 | IW | 300.00 | .00 | 300.00 |
| 09/01/2004 | ZW | 3518.00 | .00 | 3518.00 |
| 09/07/2004 | S | 50.00 | .00 | 50.00 |
| 09/08/2004 | S | 7618.00 | .00 | 7618.00 |
| 09/09/2004 | S | 7618.00 | .00 | 7618.00 |
| 09/10/2004 | IW | 300.00 | .00 | 300.00 |
| 09/10/2004 | ZW | 7318.00 | .00 | 7318.00 |
| 09/13/2004 | S | 1125.00 | .00 | 1125.00 |
| 09/14/2004 | IW | 300.00 | .00 | 300.00 |
| 09/14/2004 | ZW | 7318.00 | .00 | 7318.00 |
| 09/15/2004 | IW | 300.00 | .00 | 300.00 |
| 09/15/2004 | ZW | 7318.00 | .00 | 7318.00 |
| 09/16/2004 | IW | 600.00 | .00 | 600.00 |
| 09/16/2004 | ZW | 3518.00 | .00 | 3518.00 |
| 09/17/2004 | IW | 300.00 | .00 | 300.00 |
| 09/17/2004 | ZW | 7318.00 | .00 | 7318.00 |
| 09/20/2004 | IW | 850.00 | .00 | 850.00 |
| 09/20/2004 | ZW | 7318.00 | .00 | 7318.00 |
| 09/21/2004 | IW | 300.00 | .00 | 300.00 |
| 09/21/2004 | M | 55.00 | .00 | 55.00 |
| 09/21/2004 | ZW | 7318.00 | .00 | 7318.00 |
| 01/14/2005 | K | 300.00 | .00 | 300.00 |
| 01/14/2005 | KZ | 7318.00 | .00 | 7318.00 |
| 01/21/2005 | K | 300.00 | .00 | 300.00 |
| 01/21/2005 | KZ | 7318.00 | .00 | 7318.00 |
| 01/28/2005 | K | 300.00 | .00 | 300.00 |
| 01/28/2005 | KZ | 7318.00 | .00 | 7318.00 |
| 02/04/2005 | K | 300.00 | .00 | 300.00 |
| 02/04/2005 | KZ | 7318.00 | .00 | 7318.00 |


PLAINTIFF'S
EXHIBIT
A

FROM :THE PAIN CENTER                    FAX NO. :2159231012              Jul. 24 2005 10:21AM  P3

THE PAIN CENTER
08/24/05                             BILLINGS AND RECEIPTS
10:30:33                                 Berry, Dennis                          Page 2

| DATE OF SERVICE | DEPT | AMOUNT BILLED | AMOUNT PAID | BALANCE |
|---|---|---|---|---|
| 02/11/2005 | IP | 300.00 | .00 | 300.00 |
| 02/11/2005 | ZP | 7318.00 | .00 | 7318.00 |
| 02/18/2005 | IP | 600.00 | .00 | 600.00 |
| 02/18/2005 | ZP | 14636.00 | .00 | 14636.00 |
| 02/25/2005 | K | 300.00 | .00 | 300.00 |
| 02/25/2005 | KZ | 7318.00 | .00 | 7318.00 |
| 03/11/2005 | K | 300.00 | .00 | 300.00 |
| 03/11/2005 | KZ | 7318.00 | .00 | 7318.00 |
| 03/18/2005 | IP | 300.00 | .00 | 300.00 |
| 03/18/2005 | ZP | 7318.00 | .00 | 7318.00 |
| 03/25/2005 | IP | 300.00 | .00 | 300.00 |
| 03/25/2005 | ZP | 7318.00 | .00 | 7318.00 |
| 04/01/2005 | IP | 300.00 | .00 | 300.00 |
| 04/01/2005 | ZP | 7318.00 | .00 | 7318.00 |
| 04/08/2005 | IP | 300.00 | .00 | 300.00 |
| 04/08/2005 | ZP | 7318.00 | .00 | 7318.00 |
| 04/15/2005 | ZP | 7318.00 | .00 | 7318.00 |
| 04/22/2005 | IP | 300.00 | .00 | 300.00 |
| 04/22/2005 | ZP | 7318.00 | .00 | 7318.00 |
| 04/29/2005 | IP | 300.00 | .00 | 300.00 |
| 04/29/2005 | ZP | 7318.00 | .00 | 7318.00 |
| 05/06/2005 | K | 300.00 | .00 | 300.00 |
| 05/06/2005 | KZ | 7318.00 | .00 | 7318.00 |
| 05/13/2005 | K | 300.00 | .00 | 300.00 |
| 05/13/2005 | KZ | 7318.00 | .00 | 7318.00 |
| 05/20/2005 | K | 300.00 | .00 | 300.00 |
| 05/20/2005 | KZ | 7318.00 | .00 | 7318.00 |
| 05/27/2005 | K | 600.00 | .00 | 600.00 |
| 05/27/2005 | KZ | 14636.00 | .00 | 14636.00 |
| 06/01/2005 | K | 300.00 | .00 | 300.00 |
| 06/01/2005 | KZ | 7318.00 | .00 | 7318.00 |
| 06/03/2005 | IP | 300.00 | .00 | 300.00 |
| 06/03/2005 | ZP | 7318.00 | .00 | 7318.00 |
| 06/06/2005 | K | 300.00 | .00 | 300.00 |
| 06/06/2005 | KZ | 7318.00 | .00 | 7318.00 |
| 06/24/2005 | IP | 300.00 | .00 | 300.00 |
| 06/24/2005 | ZP | 3518.00 | .00 | 3518.00 |
| 07/15/2005 | IP | 300.00 | .00 | 300.00 |
| 07/15/2005 | ZP | 7318.00 | .00 | 7318.00 |
| 07/29/2005 | IP | 300.00 | .00 | 300.00 |
| 07/29/2005 | ZP | 7318.00 | .00 | 7318.00 |
| 08/04/2005 | K | 600.00 | .00 | 600.00 |
| 08/04/2005 | KZ | 14636.00 | .00 | 14636.00 |
| 08/19/2005 | IP | 300.00 | .00 | 300.00 |
| 08/19/2005 | ZP | 7318.00 | .00 | 7318.00 |
| 04/15/2008 | IP | 300.00 | .00 | 300.00 |
| | | ========= | ========= | ========= |
| | | 369391.00 | | 369390.00 |

FROM : THE PAIN CENTER                FAX NO. :2159231012           Jun. 18 2005 02:02PM  P1

RADIOFREQUENCY
SURGICAL CAUTERIZATION

THE PAIN CENTER
*is a multi-disciplinary facility
of pain specialists, including the fields of
anesthesiology, neurology, ENT, physical medicine,
clinical neuro-electrophysiology, neuropsychology
and musculoskeletal manipulation.*

# THE PAIN CENTER

TO: _SKal 8tag_              Re: Patient's Name: _Dennis Berry_

Address: _Po Box - 39_       Your Insured :

_Alexander City, AL_  Claim No.   :   _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_
_350_

I hereby irrevocably ass    n to Owen J. Rogal, DDS, P.C. (hereinafter referred to as Dr. Rogal or
the Pain Center) any right   hich I may have against any insurer that may be responsible for the
payment of medical bills. in  rred by reason of any treatment by Dr. Rogal. Without diminishing
this assignment, I retain the   ight to sue any person legally responsible for my injuries and include
therein a claim for payment   f Dr. Rogal's and The Pain Center bills. I understand that I may be
responsible for any such b   ls for which there is no source of insurance benefits for services
rendered prior to April 1, 19

I hereby authorize you t    pay directly to Dr. Rogal/The Pain Center, and to no one else, benefits
due to me under the terms o    ny policy, a policy of insurance which by operation of law makes me
an "insured," or by reason of   settlement or verdict which includes a claim for medical bills.

Payment of Dr. Rogal/T    Pain Center invoices within thirty (30) days of your receipt of same,
as provided under law, is a    horized upon your receipt of Dr. Rogal/The Pain Center itemized
statement of account and At    nding Physicians Report form for services rendered to me. Payment
of any amount to Dr. Rog     The Pain Center as herein directed, in whole or in part, shall be
considered the same as if pa   by your company to me. Payments include, but are limited to, any
proceeds under any insuran    policy for primary benefit coverage under the Pennsylvania, New
Jersey, Delaware or New Y    k automobile insurance laws, any proceeds of settlement or verdict
awarded for medical bills.     further irrevocably assign to Dr. Rogal/The Pain Center the right to
bring suit in his own name or   i my name for any medical bills for treatment by Dr. Rogal/The Pain
Center that are not paid with   thirty (30) days after submission to my carrier. I declare that I view
that any failure of my carrier   pay Dr. Rogal/The Pain Center to be an act of bad faith and I assign
any rights which I may have    a result of this bad faith to Dr. Rogal and The Pain Center.

You are directed not to c    liver benefits herein assigned to Dr. Rogal/The Pain Center to anyone
other than Dr. Rogal/The Pa    Center, and this directive includes my attorney, who has received a
copy of this document.  D    Rogal/The Pain Center will notify my attorney of any payments
received.

I understand that I cann    revoke this authorization without the prior written consent of Dr.
Rogal/The Pain Center, an    unless you receive such written notice of revocation from Dr.
Rogal/The Pain Center, this    cument shall remain legally binding.

_8/6/04_                                        _D B_
Date                                         Patient's Signature

PLAINTIFF'S
EXHIBIT
_B_

501-507 SOUTH 112TH STREET • PHILADELPHIA, PA 19147 • (215) 546-PAIN

Case 2:05-cv-07030-JCJPM Document 21-2 Filed 11/21/2005 Page 14 of 14

## VERIFICATION

Robert E. Cole, Esquire hereby states that he is counsel for plaintiff in this action, is able to make this Verification due to personal conversations with principals of plaintiff and verifies that the averments set forth in the foregoing pleading are true and correct to the best of his knowledge, information and belief. The undersigned understands that the statements therein made are subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

10/6/05
_____
Date

_____
Robert E. Cole, Esquire
Attorney for Plaintiff
Atty. I.D. No. 73263
437 Chestnut Street, Suite 218
Philadelphia, PA 19106
(215) 922-2050